MAY 26 2026 PM 12:20
FILED-USDC-CT-HRTFORD

Antoinette C. Taylor
P.O. Box 793
Shelbyville, Kentucky 40066
502.437.5375

Plaintiff in Pro Se

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
AT HARTFORD

| | |
|---|---|
| Antoinette C. Taylor, as an individual ) | CIVIL ACTION NO. _____ |
| ) | |
| Plaintiff, ) | COMPLAINT FOR: |
| ) | |
| v. ) | 1. THE FEDERAL |
| ) | COMMUNICATIONS |
| ) | ACT (47 U.S.C. § 201 *et seq.*) |
| ) | 2. INTRUSION UPON SECLUSION |
| ) | 3. PUBLIC DISCLOSURE OF |
| AT&T, Inc.; Reid and Riege, P.C.; and ) | PRIVATE |
| Brian O'Donnell, Individually and in his ) | 4. NEGLIGENCE |
| capacity as an employee of Reid and Riege, P.C., ) | 5. ATTORNEYS' FEES & COSTS |
| Inclusive liable, ) | UNDER O.C.GA. § 13-6-11 |
| ) | 6. PUNITIVE DAMAGES |
| Defendants. ) | 7. TORTIOUS INTERFERENCE |
| ) | 8. ABUSE OF PROCESS |
| ) | 9. RESPONDEAT SUPERIOR/ |
| ) | VICARIOUS LIABILITY |
| ) | |
| ) | ORAL ARGUMENT/TESTIMONY |
| ) | AND JURY TRIAL DEMANDED |
| ) | |

SERVE:    AT&T, Inc.
c/o Office of the Secretary of State
165 Capitol Avenue, Suite 1000
Hartford, Connecticut 06115-0470

AT&T, Inc.
Whitacre Tower
208 South Akard Street
Dallas, Texas 75202-4200

Thomas R. Kasper, Registered Agent of
Reid and Riege, P.C.
One Financial Plaza, 21st Floor
755 Main Street
Hartford, Connecticut 06103-2712

Brian O'Donnell, Individually
Reid and Riege, P.C.
One Financial Plaza, 21st Floor
755 Main Street
Hartford, Connecticut 06103-2712

*    *    *    *    *    *    *    *

## COMPLAINT

The Plaintiff, Antoinette C. Taylor, *pro se* (hereinafter "Ms. Taylor" or "Plaintiff")

individually and for her Complaint in this action collectively against, the Defendants AT&T, Inc.

(hereinafter "AT&T" or "Defendant"), Reid and Riege, P.C. (hereinafter "Reid and Riege" or

"Employer" or "Defendant"), and Brian O'Donnell (hereinafter "Mr. O'Donnell" or

"Defendant") hereby alleges the following based on (a) personal knowledge, (b) the investigation

of self-represented litigant, and (c) information and belief, as if fully stated herein as follows:

## I.    INTRODUCTION

1.    AT&T violated Antoinette C. Taylor's privacy and jeopardized both her wellbeing

and public safety when it unlawfully released her sensitive cell phone information, including

more than a year of precise location data and call and text records, to the civil defendant she was

bringing a defamation claim against proving that the defendant made a false and damaging

Page 2 of 28

statement of fact about Ms. Taylor to third parties in a group chat. AT&T reckless disregard for Ms. Taylor's safety, and its violation of both the law and its own promises to its users, has robbed Ms. Taylor of her privacy and led to years of embarrassment, harassment and mental anguish.

2.      Antoinette C. Taylor is a current and long-time AT&T customer. When Ms. Taylor requested her telephone records as pertaining to January 3, 2024 and January 4, 2024, AT&T representative and/or call center (dialed 611 from her cellphone) told her that they do not maintain telephone logs/records after 100 days and/or two months in which Ms. Taylor relied upon that information as the truth on or about February 18, 2026.

3.      AT&T unauthorized charged Ms. Taylor's telephone number 502.655.3706 connected with a feature with DirectTV wireless over the past three (3) without her consent and/or knowledge when AT&T representative and/or call center (dialed 611 from her cellphone) brought the unauthorized charged to Ms. Taylor's attention on or about April 5, 2025.

4.      On May 21, 2026, civil defendant's counsel notified Ms. Taylor by regular U.S. Mail that a subpoena was issued on May 20, 2026, AT&T produced January 3, 2024 of Ms. Taylor's location data and call and text records to defendant's counsel for the civil defendant whom she was bringing a defamation claim against proving that the defendant made a false and damaging statement of fact about Ms. Taylor to third parties in a group chat. The details in these records were breathtaking: they showed every call from 502.487.1751 made or received, every text message from 502.487.1751 sent or received, and 502.487.1751 precise location during each and every one of those contacts. They revealed where 502.487.1751 lived, where 502.487.1751 shopped, where 502.487.1751 received medical care or attended religious services, and 502.487.1751 daily routines. They exposed the phone numbers of 502.487.1751 minors,

Page 3 of 28

associates, and community members. They allowed the civil defendant that Ms. Taylor is bringing the defamation claim to ascertain nearly every detail about 502.487.1751 personal life—and many confidential details about the ongoing defamation case. Indeed, the Supreme Court has described these types of cell phone location records as "hold[ing] for many Americans the 'privacies of life.'"" *Carpenter v. United States*, 585 U.S. 296, 297 (2018) (citation modified). AT&T made the production without redacting *any* of 502.487.1751 or associates' or users' personal information or taking any steps to prevent their broad dissemination or public use. A copy of Subpoena is attached hereto as Exhibit A. A copy of Letter dated May 15, 2026 from Mary Mintel Miller of Reid & Riege to Ms. Taylor is attached hereto as Exhibit B. A copy of Certificate of Authenticity of Domestic Records Pursuant to Federal Rules of Evidence 902(11) and 902 (13) dated May 14, 2026 from Vivian Alexander of AT&T to Reid & Riege and AT&T Records Key is attached hereto as Exhibit C.

5.     AT&T's breach of Ms. Taylor's privacy violated federal law (the Federal Communication Act), which requires AT&T to safeguard user data and is designed to prevent exactly this type of dangerous breach. AT&T's conduct also violated Connecticut Unfair Trade Practices ACT, Chapter 735a of the Connecticut General Statutes, including the constitutional right to privacy and the privacy laws prohibiting the intrusion upon Ms. Taylor's seclusion and the public disclosure of private facts found in 502.487.1751 cell phone data. AT&T's egregious failure to take even basic steps to protect Ms. Taylor also constitutes gross negligence under Connecticut law.

6.     AT&T not only broke the law, it also breached its own affirmative promises to users like Ms. Taylor. Entrusted with running a cellular network established by the federal

Page 4 of 28

government and dedicated to public servants and long-time AT&T customer like Ms. Taylor. Ms. Taylor relied upon AT&T promises. AT&T has for years promised that its security measures were unprecedented and that public safety was its top priority. AT&T details the specific steps it will take in response to subpoenas like the one issued here: promising to make sure they are valid, provide consumers transparency and choice, and produce highly sensitive records like location data only if presented with evidence of probable cause through a search warrant or a court order.

7. AT&T broke every one of these promises. Rather than protect public servants and long-time AT&T customers, it disregarded every protocol in place to guard their privacy. Despite promising to investigate every subpoena it received using a team of trained specialists, AT&T failed to conduct even a minimal amount of diligence, which would have shown the highly irregular nature of the subpoena: a subpoena to testify in a civil case and bring sweeping swaths of documents concerning the personal and professional contacts and movements of 502.487.1751. AT&T knew the subpoena was for a civil case. It knew that Ms. Taylor was not the defendant in that case. It knew that Ms. Taylor was a long-time AT&T customer. It knew that the subpoena requested January 3, 2024 of location data but was not supported by *any* explanation for why, let alone a court order or a search warrant establishing the probable cause that AT&T says it requires. AT&T nonetheless produced 502.487.1751's location and call logs without objection and provided no actual notice, consent, or opportunity to object.

8. The consequences were immediate and severe. In a letter dated May 19, 2026 from Brian O'Donnell of Reid & Riege to Ms. Taylor, it made threats to file perjury charges and

to bring sanctions against Ms. Taylor as it pertains to information provided by AT&T. A copy of Letter dated May 19, 2026 from Brian O'Donnell of Reid & Riege to Ms. Taylor is attached hereto as Exhibit D. A copy of Defendant's Fourth Set of Discovery Served on Plaintiff is attached hereto as Exhibit E. Ms. Taylor was intimidated by civil defendant's counsel Brian O'Donnell as a private citizen as evidenced by threatening to file perjury charges against her as an intimidation tactic in the defamation case Ms. Taylor is bringing against defendant. Ms. Taylor alleges that Brian O'Donnell's conduct was overly aggressive or improper threats made to the opposing party as evidenced by having the intent to coerce, harass, or prevent her from pursuing the defamation case has crossed the line into self-represented litigant intimidation that which is a serious crime itself. Ms. Taylor feared that Brian O'Donnell and his law firm intends to harm her, undermine her safety, or challenge her status and well-being. Ms. Taylor perceived a threat to her job, ego, or reputation. Ms. Taylor's pursuit of justice and ensure equal protection for self-represented litigants have disappeared over intimidation tactics. Ms. Taylor's effort to achieve fairness, equity, and moral rightness in society is blocked by AT&T's breach and Brian O'Donnell and his law firm's alleged threats.

9.      AT&T's breach not only revealed the details of 502.487.1751's personal life, it also exposed many of the confidential and highly sensitive details of calls, texts, and location records without providing any notice to Ms. Taylor, AT&T undermined the critical and confidential work underway on behalf of the community.

10.     AT&T's violations of federal and state privacy laws and its breach of its own promises to protect the privacy of its users threatens not only the safety of public servants or long-time AT&T customers like Ms. Taylor, but if allowed to stand, the willingness of others like

Page 6 of 28

her to serve the public and be a AT&T customer for fear of their own safety. What reasonable public servant or AT&T customer would agree to bring a defamation claim, for example, Libelers, Slanderers, and Tortfeasors, if they knew that their highly sensitive personal cell phone data could be produced, without notice or consent, to those defendants and their lawyers, compromising their safety and security?

11.    AT&T breached Ms. Taylor's and other users' personal information, including her home address, phone numbers, date of birth, passcodes, social security number, records of calls and texts when, and for how long in March 2024 or July 2024 in which AT&T has egregiously not yet provided notice of breach.

12.    Ms. Taylor brings this lawsuit to hold AT&T accountable for its egregious failings.

13.    Brian O'Donnell retaliated against Antoinette C. Taylor after she filed a bar grievance against him on or about July 26, 2025 to Connecticut's Statewide Grievance Committee for alleged professional misconduct for violating attorney ethical rules in violation of 42 U.S. Code § 12203 and other applicable state and federal laws.

14.    Ms. Taylor experienced retaliation after Mr. O'Donnell made a threat to bring perjury charges against her as it pertains to AT&T as evidenced by making a threat solely to punish her and/or pressure her to drop the defamation claim against his client. *See* Exhibit D.

15.    Mr. O'Donnell allegedly used threats of disciplinary action or sanction by the Court or retaliation to gain leverage and/or punish Ms. Taylor after she filed a bar grievance against him. *See* Exhibit D.

Page 7 of 28

16. Mr. O'Donnell allegedly used his attorney privileges in ways that retaliated against protected speech and selectively targeted self-represented litigant after Ms. Taylor filed a bar grievance against him.

17. Ms. Taylor has previously asked Connecticut's Statewide Grievance Committee to investigate whether Mr. O'Donnell violated professional conduct rules as a licensed attorney while serving as defendant's counsel but they refused to investigate because Ms. Taylor is a self-represented litigant in a defamation case.

18. Ms. Taylor alleges Mr. O'Donnell has engaged in ethically improper conduct as evidenced by leveraging his attorney privileges in a manner that which appears retaliatory toward protected speech and selectively targets self-represented litigant who opposing counsel dislikes self-represented litigant who has pushed for disciplinary investigations into whether Mr. O'Donnell's conduct violated ethics standing governing attorneys, instead, Connecticut's Statewide Grievance Committee has allegedly failed to investigate.

19. Ms. Taylor also alleges Mr. O'Donnell appears to have breached his ethical obligations as evidenced by using his attorney privileges to pressure self-represented litigant to produce speech he—and, by implication, Mr. O'Donnell's law firm and colleagues—deem prejudicially acceptable, under threat of adverse action by Mr. O'Donnell. That is despite the fact that Ms. Taylor has filed an appeal of the recommended pre-trial motions order to the U.S. District Judge in the defamation case.

20. Mr. O'Donnell allegedly took retaliatory action after Ms. Taylor filed a bar grievance because his conduct was intended to intimidate, harass, threaten or discourage Ms. Taylor from exercising her right to report misconduct. *See* Exhibit D.

21.    Threatening perjury charges solely because Ms. Taylor filed a bar grievance against Mr. O'Donnell.

22.    Mr. O'Donnell allegedly misused of court proceedings to punish and/or or pressure Ms. Taylor. *See* Exhibit D.

23.    Mr. O'Donnell's conduct allegedly involved dishonesty and/or misrepresentation and/or abuse of legal process and/or harassment and/or intimidate toward the self-represented litigant as evidenced by conducting tortious interference with Ms. Taylor's business, and both estates of Charles Taylor, Sr. and Charles Taylor, Jr. that which is Ms. Taylor late father and late brother.

24.    Ms. Taylor brings this lawsuit to hold Mr. O'Donnell and his law firm accountable for its egregious failures and behaviors.

## THE PARTIES

25.    Plaintiff, Antoinette C. Taylor is a citizen of the Commonwealth of Kentucky, was at all times herein referred to, a citizen of the United States of America and all acts and injuries took place on the soil within the actual boundaries of the Constitutions of the United States of America and of the State of Connecticut, who present address is P.O. Box 793, Shelbyville, Kentucky 40066.

26.    Defendant, AT&T, Inc., at all relevant times is a publicly traded corporation organized and existing under all the laws of the State of Delaware, maintain its principal place of business at Whitacre Tower, 208 South Akard Street, Dallas, Texas 75202-4200. AT&T, Inc. transacts or has transacted business in this District and throughout the United States. It is the second largest wireless carrier in the United States.

27.     Defendant, AT&T, Inc. provides mobile wireless telecommunication services and sells mobile wireless handsets to Connecticuters or Nutmeggers, including the plaintiff, though AT&T Mobility agency. By registering to do business in Connecticut and appointing Office of the Secretary of State for service of process in Connecticut, AT&T, Inc. has consented to general personal jurisdiction in this State.

28.     At all relevant times, Defendant, AT&T, Inc. is a "common carrier" governed by the Federal Communications Act (hereinafter "FCA"), 47 U.S.C. § 151 *et seq.* AT&T is regulated by the Federal Communications Commission (hereinafter "FCC") for its acts and practices, including those occurring in this District.

29.     Defendant, Reid and Riege, P.C., at all relevant times is a for-profit law firm represents a wide range of practice areas and diversity of clients with its principal place of business located at One Financial Plaza, 21st Floor, 755 Main Street, Hartford, Connecticut 06103-2712.

30.     At all relevant times, Defendant, Reid and Riege, P.C. has met the definition of an "employer" under all applicable statutes. Defendant, at all times relevant hereto, was acting under color of law.

31.     Defendant, Brian O'Donnell is a natural person and citizen of the State of Connecticut and practicing licensed attorney who was supervised by Defendant, Reid and Riege, P.C., at all times relevant hereto, was acting under color of law.

## VENUE

32.     Venue of this action is properly located in the United States District Court, District of Connecticut, Abraham A. Ribicoft Federal Building, 450 Main Street, Suite A012,

Hartford, Connecticut 06103 under Title 28, § 1332(a) of the U.S.C. because this case is a civil action that asserts claims under the Constitution, laws, or treaties of the United States in which a substantial part of the events or omissions giving rise to the claims occurred. In particular, Ms. Taylor asserts claims under The Federal Communications Act, 47 U.S.C. § 201, *et seq.* and Ms. Taylor also asserts claims under 42 U.S.C. § 12203 and Restatement (Second), Torts §§ 652A, 652C, 652E, 580A, and other applicable state and federal laws, and for damages as a direct and proximate result of Defendants' egregious conduct.

## DIVERSITY JURISDICTION

33.    The Court has original jurisdiction over this matter under 28 U.S.C. § 1331. The amount in controversy in this action, exclusive of interest and costs, in excess of $150,000.00 and therefore falls within the jurisdiction of the said federal court. The plaintiff has a different citizenship (Kentucky) than the defendants (Delaware and Connecticut).

## BACKGROUND FACTS

34.    Ms. Taylor is a long-time AT&T customer with shared accounts with other users and telephone numbers.

35.    This case concerns the unlawful disclosure of 502.487.1751's personal information, precise location data and call and text records by Ms. Taylor and other users' wireless provider, AT&T. AT&T failed to provide notice nor any meaningful opportunity to object. AT&T explicitly told users that it recognizes that "consumers expect companies to safeguard their personal data and manage it responsibly" and represented that "[a]t AT&T, we have a *fundamental commitment to safeguard consumer* and employee *personal data while offering meaningful choice and transparency*. We maintain our commitment through our

Page 11 of 28

principles of transparency, security, choice and control, and integrity." AT&T, "Privacy" (as of Dec. 10, 2023), *available at*

https://web.archieve.org/web/20231210044119/https://sustainability.att.com/priority. AT&T's failure to provide notice and obtain Ms. Taylor's consent violated AT&T's own core principles and breached its promises to Ms. Taylor and the FCC.

36. At the time of the disclosure. Ms. Taylor was not informed by AT&T and/or nor had the opportunity to object. AT&T failure to tell Ms. Taylor and the other users that it had pulled and was preparing to produce within 24 hours January 3, 2024 of highly sensitive personal data on 502.487.1751 depriving Ms. Taylor and the other users of any "transparency" into what personal data was being accessed and by whom. It also deprived Ms. Taylor and the other users of any "choice or control" to prevent AT&T's disclosure through legal action.

37. On or about February 18, 2026, AT&T rejected giving Ms. Taylor copies of January 3, 2024 and January 4, 2024 telephone records per her request to do so via telephone in which Ms. Taylor was told that the records did not exist after 100 days and/or two (2) months. AT&T denied Ms. Taylor her own telephone records, including other users.

38. On or about May 14, 2026, AT&T provided January 3, 2024, 502.487.1751's personal information, precise location data and call and text records to Defendant Reid & Riege without Ms. Taylor's knowledge and/or consent. AT&T failed to notify Ms. Taylor about the subpoena nor did AT&T investigate. AT&T disclosure of sweeping data revealing 502.487.1751's exact movements and communications was an egregious violation of Ms. Taylor and other users' privacy rights and a betrayal of the promises AT&T makes to its users, particularly to long-time AT&T customers to whom AT&T promises that it prioritizes public

Page 12 of 18

safety and offers privacy. AT&T told Ms. Taylor, like all of its users, that "[a]t AT&T, we take our responsibility to protection your information and privacy very seriously" AT&T, "Privacy" (as of Dec. 10, 2023), *available at*

https://web.archieve.org/web/20231210044119/htttps://sustainability.att.com/priority.

39.    In March 2024 and July 2024, AT&T failed to inform Ms. Taylor and the other users about the breach of their personal information, including their home addresses, phone numbers, date of births, passcodes, social security numbers, records of calls and texts when, and for how long. AT&T failed to notify Ms. Taylor of the breach of private data to the public.

40.    For the past three (3) years, AT&T overcharged Ms. Taylor $75 monthly for services involving DirectTV that she did not use and/or have as it pertained to telephone number 502.655.3706 without her consent and/or knowledge. Even after Ms. Taylor reported the overcharge on or about April 5, 2025 in a letter to AT&T, AT&T continued to overcharge Ms. Taylor $75 monthly until April 4, 2026.

41.    On July 26, 2025, Ms. Taylor filed a bar grievance against Defendant Mr. O'Donnell for alleged professional misconduct in the defamation case. After the bar grievance, Mr. O'Donnell retaliated against Ms. Taylor as evidenced by using threats of disciplinary actions or retaliation to gain leverage or punish Ms. Taylor as the complainant to Connecticut Statewide Grievance Committee.

## FIRST CAUSE OF ACTION FOR
## COUNT I – THE FEDERAL COMMUNICATIONS ACT (47 U.S.C. § 201 *ET SEQ.*)

42.    Plaintiff Ms. Taylor hereby restates and incorporates the allegations contained in paragraphs 1-41 as if fully stated herein.

43.    AT&T has violated 47 U.S.C. § 222(a) by failing to protect the confidentiality of

502.487.1751's CPNI in the form of precise, real-time location data and call and text logs, as detailed herein.

44.     AT&T has violated 47 U.S.C. § 222(c) by using, disclosing, and/or permitting access to the 502.487.1751's CPNI in the form of precise location information and call and text logs to civil defendant, her counsel, and other third parties without notice, consent, and/or legal authorization required under the FCA, as detailed herein.

45.     AT&T has violated 47 U.S.C. § 222(f) by using, disclosing, and/or permitting access to 502.487.1751's CPNI, including precise location data and call and text logs, without the express prior authorization of the plaintiff, as detailed in violation of the FCA.

46.     Ms. Taylor has suffered injury to her person, property, and health as a consequence of AT&T's violations of the FCA. She has been harmed by the unauthorized access to 502.487.1751's CPNI and personal information without her consent and by AT&T's failure to secure 502.487.1751's CPNI.

47.     Additionally, Ms. Taylor has suffered emotional damages, including emotional distress, mental anguish, and suffering, as a result of AT&T's acts and practices. Ms. Taylor would not have been a long-time AT&T customer, or would have paid for wireless services, had Ms. Taylor had known that 502.487.1751's CPNI would not be protected and would instead be accessed and disseminated without notice, consent, or lawful authority.

48.     Ms. Taylor seeks the full amount of damages sustained as a consequence of AT&T's violations of the FCA, together with reasonable non-attorney's fee and administrative cost, to be fixed by the Court and taxed and collected as part of the costs of the case.

49.     Ms. Taylor also moves for a writ of injunction or other proper process, mandatory

Page 14 of 28

or otherwise, to restrain AT&T and its officers, agents, or representatives from further disobedience of the FCA's requirements, particularly as they relate to long-term AT&T customers and users subject to subpoenas in civil cases wherein, they are not the civil defendant.

## SECOND CAUSE OF ACTION FOR
## COUNT II – INTRUSION UPON SECLUSION

50. Plaintiff Ms. Taylor hereby restates and incorporates the allegations contained in paragraphs 1-49 as if fully stated herein.

51. AT&T intentionally intruded on and into the plaintiff's solitude, seclusion, or private life by providing civil defendant, her counsel, and other third parties with access to 502.487.1751's location data and call and text logs without proper notice, consent, or authority. Ms. Taylor and other user's private life include their behavior on their mobile device, their personal communications (as well as confidential professional communications), and their location data.

52. AT&T's intrusion is highly offensive and would be to any reasonable person. Ms. Taylor and the other users had a reasonable expectation of privacy in their mobile data, including their location data and call and text logs. Ms. Taylor and the other user's right to privacy is enshrined in the Connecticut's Constitution (Chapter 1, Article 1). It is protected by federal statutes (including the FCA) and by Connecticut statutory and common law, has been routinely recognized by the Supreme Court, and is reflected in the myriad regulations governing the requirements that sensitive phone data be protected, as well as enforcement actions undertaken by the FCC and countless studies, op-eds, and articles decrying the invasive nature and risks presented by unauthorized dissemination of private phone data.

53. Ms. Taylor and the other users' expectation of privacy was particularly reasonable

Page 15 of 28

given AT&T's unique access to their private mobile device and data, as well as the requirements imposed by AT&T under state and federal law.

54. AT&T has admitted that Ms. Taylor and the other users has a reasonable expectation of privacy in their location data and call and text logs, each of which qualify as CPNI. In its 2023 Transparency Report, AT&T admits that it bears "responsibility to protect [users'] information and privacy" and represented that it took that responsibility "very seriously" AT&T, "Privacy" (as of Dec. 10, 2023), *available at*

https://web.archieve.org/web/20231210044119/https://sustainability.att.com/priority. In a Customer Privacy Issue Brief linked at the 2023 Transparency Report, AT&T recognizes that "consumers expect companies to safeguard their personal data and manage it responsibly" AT&T, "Privacy" (as of Dec. 10, 2023), *available at*

https://web.archieve.org/web/20231210044119/https://sustainability.att.com/priority.

55. The offensiveness is heightened by AT&T's material misrepresentation to the plaintiff concerning the privacy and safeguard of their cell phone data—including in response to subpoenas, as alleged herein.

56. Ms. Taylor and the other users was harmed by the intrusion into their private life, as detailed throughout this complaint. AT&T's actions and conduct complained of herein were a substantial factor in causing the harm suffered by Ms. Taylor.

57. As a result of AT&T's action, Ms. Taylor seeks monetary and punitive damages in an amount to be determined at trial. She seeks punitive damages because AT&T's actions constituted willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. Punitive damages

are warranted to deter AT&T from engaging in future misconduct to the detriment of consumer privacy and public safety.

58.    The plaintiff seeks the full amounts of damages sustained by her as a consequence of AT&T's intrusion upon her seclusion, as well as declaratory and injunctive relief.

## THIRD CAUSE OF ACTION FOR
## COUNT III – PUBLIC DISCLOSURE OF PRIVATE FACTS

59.    Plaintiff Ms. Taylor hereby restates and incorporates the allegations contained in paragraphs 1-58 as if fully stated herein.

60.    AT&T publicly disclosed 502.487.1751's private data—including private facts about 502.487.1751's communications, movements, and associations contained therein—to civil defendant, her counsel, and myriad unknown third parties, leading to widespread disclosure. Through AT&T's actions, 502.487.1751's phone number and address (among other highly personal pieces of information) were publicly disclosed, leading to threat of perjury charges by Defendant O'Donnell. *See* Exhibit D.

61.    As the Supreme Court has recognized, the details contained in the January 3, 2024 502.487.1751 records disclosed by AT&T "hold for many Americans the 'privacies of life'" *Carpenter*, 585 U.S. at 297. Cell phone location data, in particular, "present[s] even greater privacy concerns than the GPS monitoring of a vehicle" because it is "almost a 'feature of human anatomy" and "tracks nearly exactly the movements of its owner" *Id.* at 311. Individuals, including Ms. Taylor and the other users, "carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales" *Id.*

62.    The details about Ms. Taylor and the other users' life that they had sought to keep

Page 17 of 28

private to protect their safety immediately ceased being private, including the location of their home and their private cell phone numbers. Those private details were immediately share by the civil counsel to whom AT&T had produced them with third parties and were quickly disseminated broadly.

63.     The disclosure of such private information to civil defendant, her counsel, and myriad unknown third parties is highly offensive and objectionable to any person of reasonable sensitivities. It defies reasonable expectations of privacy to disclose such personal and revealing details to the civil defendant a defamation claim brought by the plaintiff—particularly with no protections in place to prevent broader dissemination. The natural consequences of producing such data in litigation without objection, redaction, or designation pursuant to a protective order were foreseeable.

64.     The disclosure led to immediate and severe harm, including subjecting Ms. Taylor to ongoing threats of perjury by Defendant O'Donnell. *See* Exhibit D.

65.     As a result of AT&T's actions, Ms. Taylor seeks monetary and punitive damages in an amount to be determined at trial. The plaintiff seeks punitive damages because AT&T's actions constituted willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. Punitive damages are warranted to deter AT&T from engaging in future misconduct to the detriment of consumer privacy and public safety.

### FOURTH CAUSE OF ACTION FOR
### COUNT IV – NEGLIGENCE

66.     Plaintiff Ms. Taylor hereby restates and incorporates the allegations contained in paragraphs 1-65 as if fully stated herein.

67. AT&T owed a duty to Ms. Taylor and the other users to exercise reasonable care in safeguarding their sensitive, personal cell phone information, including CPNI, call and text logs, and/or location data. This duty arises from the sensitivity of precise location data and call and text logs and the foreseeability of harm should AT&T fail to safeguard and protect such data. This duty include, among other things, vetting and reviewing subpoenas for validity before the dissemination of sensitive information, providing plaintiff with proper and timely notice to afford Ms. Taylor and the other users' the opportunity to secure their rights (including by seeking court intervention), and disclosing 502.487.1751's CPNI only upon confirming valid authority to do so and with appropriate protective measures in place (e.g., a protective order and/or objection to recommended order) to prevent further dissemination.

68. AT&T's privacy policies acknowledged its duty to adequately protect Ms. Taylor and the other users' sensitive phone data, including location data and call/text logs.

69. AT&T had a special relationship with Ms. Taylor and the other users due to its status as their telecommunications carrier, which imposed an independent duty of care. Ms. Taylor and the other users' willingness to contract with AT&T, and thereby entrust AT&T with their location and cell data, was predicated on the understanding that AT&T would undertake adequate security, consent, and disclosure precautions.

70. AT&T breached its duty by, *inter alia*: (a) failing to implement, maintain, and execute adequate security practices to safeguard the plaintiff's data; (b) failing to review the civil defendant's subpoena and confirm its validity; (c) failing to provide the plaintiff with adequate and timely notice that AT&T would be disclosing their private data, (d) disclosing Ms. Taylor and the other users' personal data to third-parties without any limitations on or protections

Page 19 of 28

against further dissemination.

71.     But for AT&T's breaches of its duties, Ms. Taylor and the other users' sensitive data would not have been accessed by unauthorized individuals and the public.

72.     AT&T knew that its actions would likely cause Ms. Taylor substantial harm.

73.     Ms. Taylor was the foreseeable victim of AT&T's inadequate data security practices, notice and consent mechanism, and subpoena response protocols. AT&T knew or should have known that unauthorized access would cause to damage to Ms. Taylor, who AT&T knew or should have known was a long-term AT&T customer. AT&T's negligent conduct provided a means for unauthorized individuals to ascertain the plaintiff and the other users' private location data as well as the location of sensitive locations (e.g., their home and place of worship) and the phone numbers of their personal contacts, including minors.

74.     As a result of AT&T's willful failure to prevent unauthorized access, Ms. Taylor suffered injury, which includes, but is not limited to: (i) disclosure of Ms. Taylor and the other users' personal information and the personal information of others stored in their phone, (ii) exposure to a heightened, imminent risk of ongoing harms to their safety, security, privacy rights, and property rights, and (iii) financial harm, including but not limited to measures to counter the harms caused by AT&T.

75.     AT&T negligently overcharged Ms. Taylor $75 monthly for the past three (3) years for services she did use and/or have until April 4, 2026.

76.     AT&T knowingly and intentionally failed to notify Ms. Taylor and the other users regarding the breach of their personal information in March and July 2024.

77.     The damage to Ms. Taylor was a proximate, reasonably foreseeable result of

Page 20 of 28

AT&T's breaches of its duties.

78.    Ms. Taylor is entitled to damages in an amount to be proven at trial. Ms. Taylor also seeks monetary and punitive damages in an amount to be determined at trial. The plaintiff seeks punitive damages because AT&T's actions constituted willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences. Punitive damages are warranted to deter AT&T from engaging in future misconduct to the detriment of consumer privacy and public safety.

## FIFTH CAUSE OF ACTION FOR
## COUNT V – NON-ATTORNEY'S FEES AND COSTS UNDER O.C.G.A. § 13-6-11

79.    Plaintiff Ms. Taylor hereby restates and incorporates the allegations contained in paragraphs 1-78 as if fully stated herein.

80.    Through and in addition to the conduct described above, AT&T has acted in bad faith, has been stubbornly litigious, and caused Ms. Taylor unnecessary trouble and expense. As a result, Ms. Taylor is entitled to recover

## SIXTH CAUSE OF ACTION FOR
## COUNT VI – PUNITIVE DAMAGES

81.    Plaintiff Ms. Taylor hereby restates and incorporates the allegations contained in paragraphs 1-80 as if fully stated herein.

82.    AT&T's actions showed willful misconduct, malice, fraud, wantonness, oppression, and that entire want of care which would raise the presumption of conscious indifference to consequences.

83.    Ms. Taylor is therefore entitled to an award of punitive damages in an amount necessary to punish, penalize, and deter such conduce.

## SEVENTH CAUSE OF ACTION FOR
## COUNT VII – TORTIOUS INTERFERENCE

84.    Plaintiff Ms. Taylor hereby restates and incorporates the allegations contained in paragraphs 1-83 as if fully stated herein.

85.    The plaintiff is a long-term AT&T customer with a telecommunications binding contract between telecom provider (AT&T) and individual customer (Ms. Taylor), including the other users as a legally enforceable agreement in which it outlines specific data, internet, or phone services in exchange for a monthly fee such as pricing/plan, and service terms and conditions such as commitment period and early termination fee in which defendants' Mr. O'Donnell and Reid & Riege interfered with the said agreement on or about May 20, 2026.

86.    Mr. O'Donnell and Reid & Riege allegedly knew or should have known of the existing binding contract between AT&T and Ms. Taylor on or about May 20, 2026 when they sought Ms. Taylor, including the other users' "all records sufficient to identify the subscriber and/or account holder associated with telephone number 502-487-1751 on January 3, 2024, including but not limited to the account holder's name, billing address, and any other account records establishing who held, owned, or was assigned that telephone number on that date" Subpoena to AT&T Corp. c/o Secretary of State, 165 Capitol Avenue, Hartford, Connecticut, 06115-0470 *at* Exhibit A without Ms. Taylor's knowledge and/or consent and/or before Ms. Taylor's objection to recommended order (May 18, 2026, ECF No. 138) to be heard by U.S. District Judge in the defamation case (3:24-cv-01041-KAD).

87.    Mr. O'Donnell and Reid & Riege's alleged egregious actions were intentional, deliberate, and unlawful to disrupt the said binding contract between AT&T and Ms. Taylor,

Page 22 of 28

including the other users for their own benefit to gain leverage over the self-represented plaintiff in the defamation case as evidenced by causing Ms. Taylor to suffer improper, intentional, reputational, and financial harm on or about May 20, 2026.

88.    As a third party, Mr. O'Donnell and Reid & Riege allegedly induced plaintiff to breach a legally, existing binding agreement with AT&T for their own benefit to gain leverage over the self-represented plaintiff in the defamation case on or about May 20, 2026.

89.    Defendants' Mr. O'Donnell and Reid & Riege allegedly exhibited improper and egregious conduct as evidenced by making threats to file perjury charges, committing data fraud, misrepresenting the facts or coercing AT&T in ex parte communications to induce the breach between AT&T and Ms. Taylor, including the other users on or about May 20, 2026 that which caused Ms. Taylor to suffer emotional distress, mental anguish, humiliation, and embarrassment.

90.    As a result of Mr. O'Donnell and Reid & Riege alleged egregious interference with the said binding agreement between AT&T and Ms. Taylor, including the other users, it caused Ms. Taylor actual harm such as the loss of contract, reputational damaging, or financial losses when they sought Ms. Taylor, including the other users' personal information, location and cell data without Ms. Taylor's knowledge and/or consent on or about May 20, 2026.

91.    In addition to, Defendants' Mr. O'Donnell and Reid & Riege allegedly improperly attempted to lure away clients such as Charlene Taylor and Elizabeth Taylor from the estate of Charles Taylor, Jr. (PD0124-00585) allegedly through fraud, defamation, or improper tactics to lure those said clients to the estate of Charles Taylor, Sr. (PD0123-00835) that which created a conflict of interest with defendants' current client in the estate of Charles Taylor, Sr. (PD0123-00835) as evidenced by causing reputational and financial harm on May 12, 2026 and May 13,

2026 and a conflict of interest in the defamation case for their own benefit to gain leverage over the self-represented plaintiff.

92.     As a result of Mr. O'Donnell and Reid & Riege alleged intentional interference, the plaintiff has suffered lost of binding agreement with AT&T, other economical harm, and reputational harm on or about May 12, 2026, May 13, 2026, and May 20, 2026.

## EIGHTH CAUSE OF ACTION FOR
## COUNT VIII – ABUSE OF PROCESS

93.     Plaintiff Ms. Taylor hereby restates and incorporates the allegations contained in paragraphs 1-92 as if fully stated herein.

94.     Defendants' Mr. O'Donnell and Reid & Riege alleged abuse of process was premised on the filing of the bar grievance against Mr. O'Donnell on July 26, 2025 to Connecticut Statewide Grievance by the plaintiff and on an alleged disinterest of self-represented litigants participating in civil proceedings that which was an improper use of the process in the civil litigation of the defamation case proceedings.

95.     Mr. O'Donnell alleged tortious character and conduct as a former news reporter consisted of his attempts to employ a legitimate process such as timely filing motions in the court and sending detailed letters to the plaintiff by regular first class mail in the defamation case for a legitimate purpose yet in an improper manner due to alleged misuse or manipulated of legal procedure for an improper purpose, frivolous filings, harassment or intimidation, delay tactics, improper influence on the plaintiff's witnesses, abuse of discovery, et cetera. Defendants' Mr. O'Donnell and Reid & Riege's conduct amounts to an abuse of process under Connecticut law because they maliciously misused a legitimate process to accomplish a purpose not warranted with an ulterior purpose and improperly used process in the litigation of the

Page 24 of 28

defamation case.

96.     After July 26, 2025, Mr. O'Donnell allegedly, repeatedly filed meritless motions to harass or burden the opposing plaintiff when he attempted to avoid meeting and conferring with Ms. Taylor on the record. Defendant Mr. O'Donnell's alleged conduct was in furtherance of his own private interest, and alleged was willful, malicious, wanton, oppressive, and done with conscious indifference to the consequences and with specific intent to harm Ms. Taylor. Accordingly, Ms. Taylor is entitled to an award of punitive damages from Defendant Mr. O'Donnell, in an amount to be proven at trial and sufficient punish, penalize and deter Mr. O'Donnell from engaging is such conduct in the future.

97.     After July 26, 2025, Mr. O'Donnell allegedly used legal procedures to intimidate, harass or exert undue pressure on the opposing plaintiff when she refused to drop the defamation case against his client.

98.     After July 26, 2025, Mr. O'Donnell allegedly abused the discovery processes to burden the opposing plaintiff with excessive request or irrelevant outside of discovery deadliness and/or after the maximum number of interrogatories, admissions, or productions of documents are allowed; instead of taking the plaintiff's deposition.

99.     After July 26, 2025, Mr. O'Donnell allegedly, intentionally mislead the court with misinterpreted evidence such as defendant's cell phone messages on the group chat and the privilege log.

100.    After July 26, 2025, Mr. O'Donnell allegedly, deliberately caused unnecessary delays in the legal proceeding to gain a strategic advantage or to exhaust the resources of the opposing plaintiff when he made discovery requests after the deadline, failing to have his client

Page 25 of 28

available for her noticed deposition, interfering with the plaintiff's third-party witnesses such as Odessa Dubose and Darlean Macon, recently canceling the plaintiff's third-party witnesses' (Charlene Taylor and Elizabeth Taylor) deposition previously scheduled on June 18, 2026, filing the plaintiff's motion to quash, motion for a protective order and for sanctions on the plaintiff's behalf without her consent on the record, seeking fourth set of discovery propounded upon Ms. Taylor on or about May 18, 2026 even after he has exhausted the maximum allowed discovery, pushing to have the court sanction Ms. Taylor even though she complied with his discovery requests and court's orders, et cetera.

101. After July 26, 2025, Mr. O'Donnell allegedly, intentionally attempted to improperly influence the plaintiff's third-party witnesses such as Charlene Taylor and Elizabeth Taylor allegedly through coercion, bribery, or other unethical means that which caused a known conflict of interest when Mr. O'Donnell and Reid & Riege had their new clients (Charlene Taylor and Elizabeth Taylor) to sign the informed consent form of the known conflict of interest with the same legal issues in the defamation case.

102. After July 26, 2025, Mr. O'Donnell allegedly, improperly used the discovery process to obtain information for purposes other than the proper preparation of the defamation case such as Ms. Taylor, and the other users' personal call data and location without their knowledge or consent.

103. As a result of Mr. O'Donnell alleged egregious abuse of process, he caused Ms. Tayor to suffer emotional distress, mental anguish, reputational harm, financial harm, and humiliation and embarrassment.

## NINETH CAUSE OF ACTION FOR
## COUNT IX – RESPONDEAT SUPERIOR/
## VICARIOUS LIABILITY

104.    Plaintiff Ms. Taylor hereby restates and incorporates the allegations contained in paragraphs 1-103 as if fully stated herein.

105.    Defendant Reid & Riege is equally liable for their employee's actions, as detailed alleged herein.

106.    Reid & Riege is the employer of Mr. O'Donnell; therefore, the employer and its agents are vicariously liable for their employee's actions, as detailed alleged herein.

107.    An employer-employee relationship existed between defendant Reid & Riege and defendant Mr. O'Donnell and its agents.

108.    Defendant Reid & Riege's employee and its agents' actions directly caused negligent harm to Ms. Taylor as a third party, as detailed alleged herein.

109.    Reid & Riege and its agents are equally held vicariously liable for its employee's conduct, as detailed alleged herein, even if the employer and/or agent was not directly negligent, because they benefit from the employee's work.

110.    Defendant Reid & Riege and its agents equally breached its duty to exercise reasonable care and that breach of duty was a cause-in-fact of alleged intentional harm to Ms. Taylor and her well-being as the opposing plaintiff in the defamation case.

## DEMAND AND RELIEF REQUESTED

111.    **WHEREFORE**, the plaintiff respectfully demands that this Court:

112.    Conduct expedited discovery proceedings leading to a prompt trial on the merits before a jury on all claims and defenses;

Page 27 of 28

113.     Enter judgment against AT&T, Reid & Riege, and Mr. O'Donnell and in favor of the plaintiff;

114.     Award the plaintiff damages in an amount to be determined at trial, plus interest in accordance with law, including an award of punitive damages pursuant to O.C.G.A. §§ 10-1-399(a) and 51-12-5.1;

115.     Award the plaintiff her reasonable litigation expenses, including non-attorney fees, pursuant to O.C.G.A. §§ 16-9-93, 10-1-399(a), and 13-6-11; and

116.     Award such further and additional relief as is necessary to correct for the effects of AT&T, Reid & Riege, and Mr. O'Donnell's unlawful conduct as the Court may deem just and proper under the circumstances.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, the plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

**DATED:**     May 25, 2026        By:

Antoinette C. Taylor, Plaintiff in *Pro Se*
P.O. Box 793
Shelbyville, Kentucky 40066
502.437.5375

*Plaintiff demands trial by jury.*