**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ANTOINETTE C. TAYLOR<br>Plaintiff,<br>v.<br>AT&T, INC., ET AL.,<br>Defendants. | Case No. 3:26-cv-00813-SFR<br>Judge Sarah F. Russell |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT AT&T, INC.'S MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

Statement of Facts ..... 1

I. At All Relevant Times, Plaintiff's Agreements with AT&T Have Contained an Arbitration Agreement. ..... 1

A. Plaintiff Agreed to Arbitrate Disputes with AT&T When She Enrolled in AT&T's Services. ..... 1

B. Plaintiff Reaffirmed Her Agreement to Arbitrate by Agreeing to the CSA and Its Amendments. ..... 2

C. The CSA Requires Arbitration of Plaintiff's Claims. ..... 3

II. Ignoring the Arbitration Agreement, Plaintiff Files this Suit. ..... 5

LAW AND ARGUMENT ..... 6

I. The Arbitration Agreement Is Valid and Enforceable Under the FAA. ..... 7

II. Plaintiff Agreed to Arbitrate This Dispute on an Individual Basis. ..... 8

A. Plaintiff and AT&T Entered Into a Valid Agreement to Arbitrate. ..... 8

B. Plaintiff's Claims Are Within the Scope of the Arbitration Agreement. ..... 10

C. The Arbitration Agreement Is Binding and Enforceable. ..... 11

III. The Court Should Stay This Action Pending Arbitration. ..... 13

CONCLUSION ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allied-Bruce Terminix Cos., Inc. v. Dobson*,
513 U.S. 265 (1995) .......... 7

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011) .......... 8

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .......... 11, 13

*AT&T Techs., Inc. v. Communications Workers of Am.*,
475 U.S. 643 (1986) .......... 10

*Barrows v. Brinker Rest. Corp.*,
36 F.4th 45 (2d Cir. 2022) .......... 6, 8

*Byrne v. Charter Commc'ns, Inc.*,
581 F. Supp. 3d 409 (D. Conn. 2022) .......... 10

*Circuit City Stores, Inc. v. Adams*,
532 U.S. 105 (2001) .......... 7

*D'Antuono v. Serv. Rd. Corp.*,
789 F. Supp. 2d 308 (D. Conn. 2011) .......... 12

*Daimlerchrysler Ins. Co., LLC v. Pambianchi*,
762 F. Supp. 2d 410 (D. Conn. 2011) .......... 12

*Davis v. Macy's Retail Holdings, Inc.*,
No. 3:17-CV-1807 (JBA), 2018 WL 4516668 (D. Conn. Sept. 19, 2018) .......... 8

*Dean Witter Reynolds v. Byrd*,
470 U.S. 213 (1985) .......... 11

*Ferrie v. DirecTV, LLC*,
No. 3:15-CV-409 (JCH), 2016 WL 183474 (D. Conn. Jan. 12, 2016) .......... 10

*Hancock v. AT&T, Inc.*,
701 F.3d 1248 (10th Cir. 2012) .......... 13

*Homesite Ins. Co. v. Brezniak*,
581 F. Supp. 3d 424 (D. Conn. 2022) .......... 12

*Klein v. ATP Flight Sch., LLP*,
No. 14-CV-1522, 2014 WL 3013294 (E.D.N.Y. July 3, 2014) ........ 8

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ........ 7

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ........ 7, 11

*Murphy v. Glencore Ltd.*,
No. 3:18-CV-01027 (CSH), 2019 WL 549139 (D. Conn. Feb. 11, 2019) ........ 11

*PaineWebber Inc. v. Bybyk*,
81 F.3d 1193 (2d Cir. 1996) ........ 8

*Paltz v. All. Healthcare Servs., Inc.*,
No. 3:21-cv-0020 (VAB), 2022 WL 633732 (D. Conn. Mar. 4, 2022) ........ 12

*Pilon v. Discovery Communications, LLC*,
769 F. Supp. 3d 273 (S.D.N.Y. 2025) ........ 10

*Robinson v. Macy's Inc.*,
772 F. Supp. 3d 253 (D. Conn. 2025) ........ 7, 12, 13

*Sapan v. DIRECTV, LLC*,
No. 8:22-cv-01600-FWS-JDE, 2023 WL 5505914 (C.D. Cal. June 9, 2023) ........ 13

*Scott v. AT&T Inc.*,
No. 19-cv-04063-SK, 2021 WL 2839959 (N.D. Cal. Feb. 16, 2021) ........ 13

*Smith v. Spizzirri*,
601 U.S. 472 (2024) ........ 13

*Taylor v. Frazier*,
No. 3:24-cv-01041-KAD (D. Conn.) ........ 6

*The Citizens Bank v. Alafabco, Inc.*,
539 U.S. 52 (2003) ........ 7

*Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989) ........ 7, 10

*Wachovia Bank, Nat'l Ass'n v. VCG Special Opps. Master Fund, Ltd.*,
661 F.3d 164 (2d Cir. 2011) ........ 7

*Zachman v. Hudson Valley Fed. Credit Union*,
49 F.4th 95 (2d Cir. 2022) ........ 6

**Statutes**

9 U.S.C. § 1 *et seq.* ........ *passim*

9 U.S.C. § 3 ........ 11, 13

9 U.S.C. § 4 ........ 11

Conn. Gen. Stat. §§ 52-409, 52-410 ........ 11

O.C.G.A. § 13-6-11 ........ 6

## INTRODUCTION

Plaintiff Antoinette Taylor and defendant AT&T, Inc. agreed that disputes between them should be resolved in arbitration. Her lawsuit does not belong in this venue.

On December 12, 2012, Plaintiff signed a consent form expressly agreeing to AT&T's rates, terms, and conditions, including arbitration provisions, as part of her agreement to receive AT&T's services. Over more than a decade, Plaintiff repeatedly reaffirmed her agreement to arbitrate disputes with AT&T, including on July 11, 2021, December 22, 2022, November 14, 2024, and most recently on April 3, 2026—just a month before filing this litigation—when she again signed consent forms acknowledging and agreeing to AT&T's Consumer Service Agreement ("CSA") and its arbitration provisions.

The CSA requires her to "resolve disputes through arbitration on an individual basis." As a result, any "claims arising out of or relating to any aspect of the relationship between" AT&T and Plaintiff, including those asserted here, must be resolved through individual arbitration. Whether asserted as privacy claims or claims challenging AT&T's assessment of charges, Plaintiff's claims against AT&T all arise out of the parties' relationship, and fall within the scope of this arbitration agreement.

AT&T thus respectfully requests that this Court grant AT&T's motion to compel Plaintiff to pursue her claims in arbitration.

## STATEMENT OF FACTS

### I. At All Relevant Times, Plaintiff's Agreements with AT&T Have Contained an Arbitration Agreement.

#### A. Plaintiff Agreed to Arbitrate Disputes with AT&T When She Enrolled in AT&T's Services.

Plaintiff Antoinette Taylor received AT&T wireless telephone services from

December 2012 through at least May 2026. *See* Declaration of Andrew J. Schuddeboom[1] ("Schuddeboom Decl.") ¶ 5 & Ex. A; Amended Complaint ("Am. Compl.") ¶ 2.[2] As part of AT&T's regular and routine business practices, AT&T provides customers with the terms and conditions of their services when they sign up. *See* Schuddeboom Decl.¶ 3. Consistent with those practices, Plaintiff received and signed a consent form agreeing to the terms of her AT&T wireless service contained in AT&T's Wireless Customer Agreement. *See id.*

That Wireless Customer Agreement contained a mandatory arbitration agreement, highlighted in the introductory paragraph in capitalized, boldface font. It instructed Plaintiff to "**PLEASE READ THIS AGREEMENT CAREFULLY TO ENSURE THAT YOU UNDERSTAND EACH PROVISION**" because "**THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS.**" (emphasis and typography in original). *Id.*, ¶ 6 & Ex. B.

### B. Plaintiff Reaffirmed Her Agreement to Arbitrate by Agreeing to the CSA and Its Amendments.

In 2021, AT&T streamlined its separate contracts for consumer offerings—including the Wireless Customer Agreement—into a single agreement, the CSA. *Id.*, ¶ 7. Pursuant to AT&T's regular and routine business practices, AT&T provided robust notice of the CSA to existing customers—including Plaintiff—of this change and the updated terms, including through customer billing statements. *Id.*, ¶¶ 8-9. Plaintiff thus received notice of the rollout

---

[1] Andrew J. Schuddeboom is an Associate Director in AT&T Services, Inc.'s Legal Department.

[2] The Court ordered Plaintiff to file her Amended Complaint on or before August 26, 2026 and set Defendants' responsive pleading deadline as September 16, 2026. ECF 37.Though Plaintiff did not file her Amended Complaint until September 14, 2026, AT&T is complying with the responsive pleading deadline set by the Court.

in her monthly billing statements shortly after the CSA went into effect. *Id.* & Ex. C. At the same time, Plaintiff signed a consent form, agreeing to arbitrate disputes with AT&T. *Id.*, ¶ 9 & Ex. D.

Then, on December 1, 2022, AT&T updated the terms and conditions to the CSA. *Id.*, ¶ 10 & Ex. E. Again, pursuant to AT&T's regular and routine business practices, AT&T provided robust notice to all existing customers—including Plaintiff—of the updated CSA and the changes to the arbitration agreement. *Id.*, ¶ 11.

On December 22, 2022, just weeks after the revised version of the CA went into effect, Plaintiff signed a consent form stating in relevant part:

> [Antoinette C. Taylor] reviewed and agree[d] to the rates, terms, and conditions for the wireless products and services described in the Consumer Service Agreement (**including** limitation of liability and **arbitration provisions**) and the Customer Service Summary, **both of which were made available to [her] prior to [her] signing**.

*Id.*, ¶ 13 & Ex. F (emphasis added).

Since then, Plaintiff has signed consent forms agreeing to arbitration two more times—including the month prior to filing this litigation**.** *See, id.*, ¶ 14 & Ex. G (consenting to arbitration provisions on or about November 14, 2024); *id.*, ¶ 15 & Ex. H (consenting to arbitration provisions on or about April 3, 2026).

### C. The CSA Requires Arbitration of Plaintiff's Claims.

The introductory section of the CSA advised Plaintiff that she would agree to the terms of the CSA by continuing to use AT&T's services:

> By activating, using, or paying for any AT&T products or services ("AT&T Service(s)" or "Service(s)"), you agree to be bound by this Consumer Service Agreement ("Agreement"). **If you don't agree, please contact us immediately to cancel your order and/or service and return any products.**

*Id.* Ex. E, at Introduction (emphasis added). The very next paragraph informed Plaintiff, in

bolded font, that the CSA required her to arbitrate claims against AT&T:

> **Please read this Agreement carefully. It requires you and AT&T to resolve disputes through arbitration on an individual basis rather than jury trials or class actions. It also governs how we handle your information, including information related to your AT&T Account and your location.**

*Id.* The CSA states that "[t]o the greatest extent permitted by law, AT&T and [Plaintiff] agree to arbitrate all disputes and claims between [Plaintiff] and AT&T." *Id.*, Ex. E, §§ 1.3.2.1. The CSA also states that the arbitration agreement "is intended to be broadly interpreted" and includes claims "based in contract, tort, fraud, misrepresentation, or any other . . . legal theory." *Id.*

Section 1.3.2 of the CSA contains the arbitration agreement and makes clear that arbitration will be governed by the Federal Arbitration Act ("FAA"). Specifically, the arbitration agreement states that "**you agree to arbitrate all disputes and claims between you and AT&T**, except for claims arising from bodily injury or death," and it defines "you" to include, among other things, "all authorized or unauthorized users or beneficiaries of AT&T Services or products under past, present, or future Agreements between you and AT&T." *Id.* (emphasis added). The arbitration agreement expressly encompasses "**claims arising out of or relating to any aspect of the relationship between us**," including "claims that arose before the existence of this or any prior Agreement"; and "claims that may arise after the termination of this Agreement." *Id.* (emphasis added). All issues are for the arbitrator to decide, except only a court can decide . . . issues relating to the scope and enforceability of the arbitration provision" and "whether a dispute can or must be brought in arbitration." *Id.* § 1.3.2.3.

To provide customers like Plaintiff with a simple and cost-effective mechanism to resolve disputes with AT&T, the arbitration provision in the CSA includes numerous consumer-friendly features. For example:

- **Covered arbitration fees:** AT&T agrees to pay all "filing, administration, case management, hearing, and arbitrator fees" with limited exceptions, including when the arbitrator determines the customer's claim "[wa]s frivolous or brought for an improper purpose." *Id.* § 1.3.2.4.

- **Minimum $10,000 award and double attorneys' fees**: If the arbitrator issues an award in favor of a customer that is greater than AT&T's last written settlement offer made before an arbitrator was selected, then AT&T will (1) pay the customer either the amount of the award, or $10,000 (CSA), whichever is greater; and (2) pay the customer's retained attorney "twice the amount of attorneys' fees and reimburse any expenses (including expert witness fees and costs), that [the] attorney reasonably accrues for investigating, preparing, and pursuing [the] claim in arbitration." *Id.*, § 1.3.2.5.

- **Small claims court option**. Either party may bring a claim in small claims court. *Id.*, § 1.3.2.1.

- **Full remedies available**. The arbitrator can award any form of individual relief (including punitive damages) that a court could award. *Id.*, § 1.3.1.

- **Local or remote arbitration hearings**. "Any hearings will be in the same county as your billing address, or they might be held by phone or videoconference." *Id.* § 1.3.1.

Finally, the CSA provides AT&T customers, including Plaintiff, the option to **opt-out of any changes** made to the arbitration agreement by simply mailing a written notice to AT&T's legal department at the provided address stating that they reject the change. *Id.* ¶ 12. AT&T's records indicate that Plaintiff never opted-out of any change to the arbitration agreement and continued to use AT&T's services. *Id.*

## II. Ignoring the Arbitration Agreement, Plaintiff Files this Suit.

Despite her agreement to arbitrate all disputes with AT&T, Plaintiff filed this case against AT&T on May 26, 2026 in the District of Connecticut. *See* Am. Compl.

Plaintiff's claims against AT&T are based entirely on the parties' contractual relationship for the provision of wireless telecommunications services. Specifically, Plaintiff alleges that AT&T violated her privacy by providing records related to her mobile telephone number in response to a subpoena issued in an unrelated civil matter, *Taylor v. Frazier*, No. 3:24-cv-01041-KAD (D. Conn.). Am. Compl. ¶ 4 & Exs. A-C. Plaintiff also alleges unauthorized charges by AT&T "connected with a feature with DirectTV wireless." *Id.*, ¶¶ 3, 40. Based on these allegations, Plaintiff brings claims against AT&T for violations of the Federal Communications Act (Count I), Intrusion Upon Seclusion (Count II), Public Disclosure of Private Facts (Count III), Negligence (Count IV), Non-Attorney's Fees and Costs under O.C.G.A. § 13-6-11 (Count V), Punitive Damages (Count VI).[3] *Id.*, ¶¶ 42-83.

## LAW AND ARGUMENT

"The party seeking to compel arbitration bears an initial burden of demonstrating that an agreement to arbitrate was made." *Zachman v. Hudson Valley Fed. Credit Union*, 49 F.4th 95, 101–02 (2d Cir. 2022). This does not require a showing that the agreement would be enforceable; instead, the moving party must simply show that an agreement existed. *Barrows v. Brinker Rest. Corp.*, 36 F.4th 45, 50 (2d Cir. 2022). "Once the existence of an agreement to arbitrate is established, the burden shifts to the party seeking to avoid arbitration to show the agreement to be inapplicable or invalid." *Zachman*, 49 F.4th at 102 (cleaned up; citation omitted). "If the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law," courts "may rule on the basis of that legal issue and avoid the need for further court proceedings." *Id.* at

[3] The remaining claims are brought against Defendants Reid and Riege, P.C. and Brian O'Donnell.

101, quoting *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 74 (2d Cir. 2017); *Wachovia Bank, Nat'l Ass'n v. VCG Special Opps. Master Fund, Ltd.*, 661 F.3d 164, 172 (2d Cir. 2011) (similar).

**I. The Arbitration Agreement Is Valid and Enforceable Under the FAA.**

AT&T's arbitration agreement is valid and enforceable under the FAA. The FAA extends to the outermost limits of Congress's constitutional powers under the Commerce Clause. *See The Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (explaining that the term "involving commerce" in the FAA "signal[s] the broadest permissible exercise of Congress'[s] Commerce Clause power"); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 112 (2001). The FAA "embodies a national policy favoring arbitration" and therefore "the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'" *Robinson v. Macy's Inc.*, 772 F. Supp. 3d 253, 260 (D. Conn. 2025); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) (the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."); *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989); *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625–26 (1985).

An arbitration agreement falls under the FAA if it is executed in connection with a transaction that in fact involves interstate commerce in any way, "even if the parties did not contemplate an interstate commerce connection." *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995). Here, AT&T's arbitration agreement is expressly governed by the FAA. The CSA provides that it "evidences a transaction in interstate commerce, and thus

the Federal Arbitration Act governs the interpretation and enforcement of [the] arbitration provision." Schuddeboom Decl., Ex. E § 1.3.2.5. Courts routinely enforce such provisions. *See Klein v. ATP Flight Sch., LLP*, No. 14-CV-1522, 2014 WL 3013294, at *1, *4–11 (E.D.N.Y. July 3, 2014) (enforcing an arbitration clause in which the plaintiff acknowledged that the agreement and underlying services constituted transactions involving interstate commerce and agreed that the agreement and related disputes were governed by the FAA); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) ("Any arbitration agreement affecting interstate commerce, such as the one at issue, is subject to the Act.").

## II. Plaintiff Agreed to Arbitrate This Dispute on an Individual Basis.

Courts in the Second Circuit use a two-part test to determine whether claims are subject to arbitration: they consider "(1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). Both prongs are satisfied here.

### A. Plaintiff and AT&T Entered Into a Valid Agreement to Arbitrate.

In determining whether parties agreed to arbitrate, courts apply general principles of contract law. *See Davis v. Macy's Retail Holdings, Inc.*, No. 3:17-CV-1807 (JBA), 2018 WL 4516668, at *3 (D. Conn. Sept. 19, 2018). Under Connecticut law,[4] "[t]he essential terms of a valid contract are an offer, acceptance of that offer, and consideration." *Davis v. Macy's Retail Holdings, Inc.*, No. 3:17-CV-1807 (JBA), 2018 WL 4516668, at *3 (D. Conn. Sept. 19, 2018), quoting *Chiulli v. Chiulli*, 127 A.3d 1146, 1151 (Conn. App. Ct. 2015).

[4] "[A]greement-formation questions" are determined "by applying the law of the state at issue[.]" *Barrows*, 36 F.4th at 50.

As set forth above, Plaintiff was required to and did affirmatively express her consent to arbitration by agreeing to be bound to arbitrate disputes with AT&T when she agreed to the terms of the AT&T Wireless Customer Agreement in December 2012. Schuddeboom Decl., ¶¶ 5-6 & Ex. A. Then, as part of AT&T's rollout of the Consumer Service Agreement, AT&T provided advance notice to all existing customers (including Plaintiff) that the CSA would contain new contractual terms, including an updated arbitration provision. *Id.*, ¶¶ 8-9.

Plaintiff continued to manifest her assent to updates to the CSA—and the arbitration agreement contained in it—by signing multiple consent forms as she updated her services with AT&T. *Id.* Exs. B, D, E, & F. Plaintiff signed a consent form on July 11, 2021, shortly after the CSA went into effect. *Id.*, ¶ 9 & Ex. D. Then, after AT&T updated the CSA in late 2022, AT&T provided customers notice of changes to the CSA, *id.*, ¶ 11, Plaintiff signed a consent form acknowledging that she "reviewed and agree[d] to the rates, terms, and conditions for the wireless products and services described in the Consumer Service Agreement (including limitation of liability and arbitration provisions) . . . which were made available to [her] prior to [her] signing." *Id.*, ¶ 13 & Ex. F. Plaintiff signed identical consent forms on November 14, 2024 and April 3, 2026—just a month prior to filing this lawsuit. *Id.*, ¶¶ 14-15 & Exs. G & H.

In addition to the consent forms that explicitly agreed to by Plaintiff, she continued to manifest her assent by continuing to use AT&T's services after receiving (multiple times) clear notice on her monthly billing statements that continued use of AT&T's wireless services would mean that Plaintiff accepted the terms. Plaintiff continued to use AT&T wireless services at least through May 26, 2026, Am. Compl. ¶ 2, during which time she

never opted-out of the arbitration agreement. Schuddeboom Decl., ¶ 12. Her continued use of AT&T's wireless services after receiving notice of, and agreeing to, the CSA further manifests acceptance of its terms. *See Byrne v. Charter Commc'ns, Inc.*, 581 F. Supp. 3d 409, 417 (D. Conn. 2022) (finding plaintiffs assented to arbitration provision by affirmatively accepting the terms, continuing to use and pay for services following notice of the arbitration provision, and failing to opt-out of the arbitration provision); *Ferrie v. DirecTV, LLC*, No. 3:15-CV-409 (JCH), 2016 WL 183474, at *6 (D. Conn. Jan. 12, 2016) (finding assent where the customer had inquiry notice of the agreement and accepted service rather than taking the identified steps to reject the agreement); *Pilon v. Discovery Communications, LLC*, 769 F. Supp. 3d 273, 289 (S.D.N.Y. 2025) (holding that the consumer "unambiguously assented to [an updated] agreement" by continuing to subscribe to the service where he was "'explicitly advised' that renewing his subscription and continuing to use [the] service would 'constitute assent.'").

**B. Plaintiff's Claims Are Within the Scope of the Arbitration Agreement.**

Courts must "'rigorously enforce' [arbitration] agreements according to their terms." *Volt*, 489 U.S. at 479. The existence of an arbitration agreement raises a presumption that a claim is subject to arbitration, which may be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986).

As described above, AT&T's arbitration agreement is "to be broadly interpreted" and apply to "all disputes and claims between" the parties (with limited exceptions inapplicable here), including those "based in contract, tort, fraud, misrepresentation, and any other . . .

legal theory." Schuddeboom Decl. Ex. E § 1.3.2.1. These provisions plainly encompass Plaintiff's claims for violation of privacy rights (Am. Compl. Counts I – VI) and claims for unauthorized charges (Am. Compl. Count IV). Indeed, Plaintiff specifically alleges that AT&T owed her "a duty of care" by virtue of AT&T's "special relationship with" Plaintiff and AT&T's "status as their [sic] telecommunications carrier." Am. Compl. ¶ 69.

**C. The Arbitration Agreement Is Binding and Enforceable.**

Where, as here, an arbitration agreement governed by the FAA covers claims that have been asserted in a lawsuit, any court having jurisdiction over the case must compel arbitration and stay further judicial proceedings until the arbitration has been held. 9 U.S.C. §§ 3, 4; Conn. Gen. Stat. §§ 52-409, 52-410; *Moses H. Cone*, 460 U.S. at 24–25. Enforcement is mandatory, not discretionary. 9 U.S.C. § 4; *Moses H. Cone*, 460 U.S. at 24–25.

"By its terms, the act leaves no place for the exercise of discretion by a [court], but instead mandates that [courts] shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original); *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011), quoting 9 U.S.C. § 4 (noting Section 4 of the FAA mandates that a court compel arbitration "'in accordance with the terms of the agreement' upon the motion of either party to the agreement."); *Murphy v. Glencore Ltd.*, No. 3:18-CV-01027 (CSH), 2019 WL 549139, at *2 (D. Conn. Feb. 11, 2019).

AT&T anticipates that Plaintiff may attempt to avoid her obligations to arbitrate by asserting that the arbitration agreement is unenforceable and unconscionable, but she cannot do so, either in this Court or in arbitration.

The "classic definition of an unconscionable contract is one which no man in his senses, not under delusion would make, on the one hand, and which no fair and honest man would accept, on the other." *Robinson*, 772 F. Supp. 3d at 263, quoting *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 327 (D. Conn. 2011). Under Connecticut law, Plaintiff, the party claiming unconscionability, "typically has the burden of showing that the contract is both procedurally and substantively unconscionable." *Id.*, quoting *D'Antuono*, 789 F. Supp. 2d at 327.

As for procedural unconscionability, courts have declined to find procedural unconscionability where, as here, the party claiming unconscionability could have declined to receive the services, found them elsewhere, or was given the opportunity to opt out of the arbitration agreement—in which case the arbitration agreement is not adhesive, and thus not procedurally unconscionable. *Homesite Ins. Co. v. Brezniak*, 581 F. Supp. 3d 424, 434-35 (D. Conn. 2022); *see also Paltz v. All. Healthcare Servs., Inc.*, No. 3:21-cv-0020 (VAB), 2022 WL 633732, at *7 (D. Conn. Mar. 4, 2022) (no procedural unconscionability where "explicit text" of the signed acknowledgment directed plaintiff to the dispute resolution policy); *D'Antuono v. Serv. Rd. Corp.*, 789 F. Supp. 2d 308, 328 (D. Conn. 2011) (no procedural unconscionability arising from "claim that the parties had unequal bargaining power" or defendants' failure to "specifically direct Plaintiffs' attention to the arbitration clause"); *accord Daimlerchrysler Ins. Co., LLC v. Pambianchi*, 762 F. Supp. 2d 410, 423 (D. Conn. 2011), *aff'd sub nom. DaimlerChrysler Ins. Co. v. Pambianchi*, 469 F. App'x 65 (2d Cir. 2012) ("Under Connecticut law, a court cannot find procedural unconscionability unless the party opposing enforcement of a contractual provision has introduced some *specific* evidence

of overreaching by the other party in the formation of the agreement") (emphasis in original).

Nor will Plaintiff be able to show substantive unconscionability. Courts around the country—including the U.S. Supreme Court—have repeatedly upheld AT&T's arbitration provisions. *See, e.g.*, *Concepcion*, 563 U.S. at 352; *Hancock v. AT&T, Inc.*, 701 F.3d 1248, 1257–58 (10th Cir. 2012) (observing AT&T's terms of service have repeatedly been found "valid and enforceable" and "are of the type that are routinely upheld"); *Sapan v. DIRECTV, LLC*, No. 8:22-cv-01600-FWS-JDE, 2023 WL 5505914, at *7–8 (C.D. Cal. June 9, 2023) (finding AT&T's arbitration agreement enforceable under California state law and neither procedurally nor substantively unconscionable); *Scott v. AT&T Inc.*, No. 19-cv-04063-SK, 2021 WL 2839959, at *6 (N.D. Cal. Feb. 16, 2021) (compelling arbitration and finding AT&T's arbitration agreement enforceable).

## III. The Court Should Stay This Action Pending Arbitration.

Because Plaintiff's claims are subject to arbitration, this Court should stay all proceedings in this action against AT&T pursuant to 9 U.S.C. § 3 of the FAA, including discovery, until after Plaintiff has submitted her claims against AT&T to arbitration and the arbitration proceeding has been completed. *See Robinson*, 772 F. Supp. 3d at 264, citing *Katz v. Cellco P'ship.*, 794 F.3d 341, 345–47 (2d Cir. 2015).

Under the FAA, a court presented with a claim "referable to arbitration under an agreement in writing for such arbitration" must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. The Supreme Court recently interpreted this provision to mean that "[w]hen a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration,

§ 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024). Because Plaintiff's claims must be arbitrated and AT&T has requested a stay, this action must be stayed pending the outcome of any arbitration.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendant AT&T, Inc.'s Motion to Compel Arbitration and Stay Litigation and compel arbitration of Plaintiff's claims.

Dated: September 16, 2026

Respectfully submitted,

BAKER & HOSTETLER LLP

By: */s/ Philip H. Bieler*

Philip H. Bieler (ct16252)
45 Rockefeller Plaza, 14th Floor
New York, NY10111
Telephone: (212) 847-2868
Facsimile: (212) 589-4201
Email: pbieler@bakerlaw.com

Kyle T. Cutts*
127 Public Square, Suite 2000
Cleveland, OH 44114
Telephone: 216.861.7576
Facsimile: 216.696.0740
Email: kcutts@bakerlaw.com

*Attorneys for Defendant AT&T, Inc.*

**pro hac admission forthcoming*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 16, 2026, I caused to be electronically filed the foregoing using the CM/ECF system, which will send notification of such filing to all counsel of record. In addition, the filing was sent via postal mail to Plaintiff Taylor at the following address:

Antoinette C. Taylor
P.O. Box 793
Shelbyville, KY 40065

*/s/ Philip H. Bieler*
Philip H. Bieler