**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | |
|---|---|
| ANTOINETTE C. TAYLOR<br><br>Plaintiff,<br><br>v.<br><br>AT&T, INC., ET AL.,<br><br>Defendants. | Case No. 3:26-cv-00813-SFR<br><br>Judge Sarah F. Russell |

# DECLARATION OF ANDREW J. SCHUDDEBOOM

Personally appeared before the undersigned officer, duly authorized to administer oaths, came ANDREW J. SCHUDDEBOOM, who after being sworn, deposes and says as follows:

1. My name is Andrew J. Schuddeboom. I am over the age of 18 and am competent to testify. The facts contained in this affidavit are based on my personal knowledge and my review of relevant business records.

2. I am employed by AT&T Services, Inc., as an Associate Director in the Legal Department. In my role as Associate Director, I am familiar with the provision of AT&T, Inc.'s ("AT&T") services to its customers, including the terms of service under which those customers receive services, the process by which customers accept those terms of service, and related company records. I also am familiar with the manner in which those agreements and records pertaining to customers' accounts are stored in the regular and ordinary course of business and may be retrieved. I also have become personally familiar with Plaintiff Antoinette C. Taylor's AT&T wireless services account.

3. As part of AT&T's regular and routine business practices, AT&T provides customers with the terms and conditions of their services when they place new orders for AT&T wireless products or services, or upgrade existing products or services. To place orders or upgrade existing products or services, customers must accept AT&T's terms of service.

4. I provide the below details based on my review of AT&T's business records for Ms. Taylor's account.

5. According to AT&T's business records, Ms. Taylor opened an AT&T account for wireless telephone services on or about December 26, 2012 and was assigned the mobility billing account number (BAN) 545091925748, which is associated with the wireless lines (502) 487-1751 and (502) 655-3706. On that same date, and in connection with opening that account, Ms. Taylor electronically agreed to the rates, terms and conditions of the AT&T Wireless Customer Agreement ("WCA"), including its limitation of liability and arbitration provisions, and the Customer Service Summary, both of which were available to her prior to her signing. A true and correct copy of AT&T's record of Ms. Taylor's electronic acceptance of the contract is attached hereto as **Exhibit A**. This record is kept in the course of AT&T's regularly conducted activities, and the generation of these acceptance records is a regular practice of these activities.

6. Specifically, the introductory paragraph to the WCA stated in capitalized, bold typeface, "**PLEASE READ THIS AGREEMENT CAREFULLY TO ENSURE THAT YOU UNDERSTAND EACH PROVISION**" because "**THIS AGREEMENT REQUIRES THE USE OF ARBITRATION ON AN INDIVIDUAL BASIS TO RESOLVE DISPUTES, RATHER THAN JURY TRIALS OR CLASS ACTIONS.**"

(emphasis and typography in original). A true and correct copy of the WCA, which was in effect on December 26, 2012, is attached hereto as **Exhibit B**.

7. In May 2021, AT&T updated its contracts for wireless telephone services, as well as for other AT&T services, in a single contract: the Consumer Service Agreement. The Consumer Service Agreement replaced the WCA. Section 1 of the Consumer Service Agreement contains a set of universal terms applicable to all of the covered products and services, including wireless telephone services to which Ms. Taylor subscribed.

8. As part of AT&T's rollout of the Consumer Service Agreement, in March 2021 and April 2021, AT&T provided advance notice to all existing customers on monthly billing statements, informing customers that the Consumer Service Agreement includes an updated arbitration provision, and that consumers would be bound by the Consumer Service Agreement if they chose to continue receiving AT&T services. The billing notices stated on the first page, "We've updated your contract to include arbitration term effective 5/21/2021. Your continued use of AT&T service tells us you agree to these terms. See att.com/CSA and end of bill." The billing statement also stated, "**We have updated your contract terms[.]** We have consolidated contract terms for certain AT&T services (AT&T Wireless, AT&T PREPAID, AT&T Phone, AT&T Fiber, Internet Fixed Wireless, and DSL) into one simplified Consumer Service Agreement at att.com/ConsumerServiceAgreement. Effective 5/5/2021, your continued use of AT&T service tells us you agree to these terms, including the updated clause requiring you and us to resolve disputes by individual arbitration and not just by jury trial or class action. For details, go to att.com/CSA" (emphasis in original). A true and correct copy of AT&T's record of Ms. Taylor's March 27, 2021 and April 27, 2021 billing statements are attached

hereto as **Exhibit C**. These records of billing statements are kept in the course of AT&T's regularly conducted activities, and the generation of these billing statements is a regular practice of these activities.

9. Beyond receiving notice of the rollout in her monthly billing statements, AT&T's business records show that Ms. Taylor signed a consent form on or around July 11, 2021, shortly after the Consumer Service Agreement went into effect. A true and correct copy of AT&T's record of the signature captured from Ms. Taylor during this transaction is attached hereto as **Exhibit D**. This record of signature is kept in the course of AT&T's regularly conducted activities, and the generation of these signature records is a regular practice of these activities.

10. AT&T updated the Consumer Service Agreement again in 2022 and the changes became effective on December 1, 2022. A true and correct copy of the Consumer Service Agreement is attached hereto as **Exhibit E**.

11. Again, notice of the changes to the Consumer Service Agreement were provided to customers, including Ms. Taylor, informing them of changes to the Consumer Service Agreement, including the arbitration provisions, in customer billing statements, stating: "We've updated your Service Agreement terms, including the arbitration clause, effective 12/1/22. By continuing to use our services, you agree. (See att.com/CSA and end of bill."

12. The May 2021 and December 2022 versions of the Consumer Service Agreement both provided AT&T customers the option to opt-out of any changes made to the arbitration provision by mailing written notice to AT&T's legal department at the provided address stating that they reject the changes. A review of company records showed

that Ms. Taylor never opted-out of any change to the arbitration provisions set forth in the Consumer Service Agreement updated in either May 2021 or December 2022.

13. Moreover, AT&T's business records show that Ms. Taylor signed a consent form on or around December 22, 2022, just weeks after the revised version of the Consumer Service Agreement went into effect. The consent form states in relevant part:

> I [Antoinette C. Taylor] have reviewed and agree[d] to the rates, terms, and conditions for the wireless products and services described in the Consumer Service Agreement (including limitation of liability and arbitration provisions) and the Customer Service Summary, both of which were made available to me prior to my signing.

A true and correct copy of AT&T's record of the signature captured from Ms. Taylor during this transaction is attached hereto as **Exhibit F**. This record of signature is kept in the course of AT&T's regularly conducted activities, and the generation of these signature records is a regular practice of these activities.

14. Ms. Taylor signed another consent form on or about November 14, 2024 in connection with a transaction on her account. That consent form states in pertinent part:

> I [Antoinette C. Taylor] have reviewed and agree[d] to the rates, terms and conditions for the wireless products and services described in the Consumer Service Agreement (including limitation of liability and arbitration provisions) and the Customer Service Summary, both of which were made available to me prior to my signing.

A true and correct copy of AT&T's record of the signature captured from Ms. Taylor during this transaction is attached hereto as **Exhibit G**. This record of signature is kept in the course of AT&T's regularly conducted activities, and the generation of these signature records is a regular practice of these activities.

15. AT&T's business records further show that Ms. Taylor signed a consent form on or about April 3, 2026 in connection with a transaction on her account. That consent form states, in pertinent part:

> I [Antoinette C. Taylor] have reviewed and agree[d] to the rates, terms, and conditions for the wireless products and services described in the Consumer Service Agreement (including limitation of liability and arbitration provisions) and the Customer Service Summary, both of which were made available to [her] prior to [her] signing.

A true and correct copy of AT&T's record of the signature captured from Ms. Taylor during this transaction is attached hereto as **Exhibit H**. This record of signature is kept in the course of AT&T's regularly conducted activities, and the generation of these signature records is a regular practice of these activities.

16. Based on my review of AT&T's business records, Ms. Taylor continued to pay her monthly bill and use AT&T's services following the CSA updates in 2021 and 2022.

17. The Exhibits attached hereto and described above are true and correct copies of documents drafted, created, generated, and/or sent by AT&T personnel (including employees, agents, and contractors) in the course and scope of their employment, and they are made and kept in the regular course of business, at or near the time of the occurrence of the act, condition, or event set forth therein. AT&T maintains the documents reflected in the Exhibits in the regular course of its business in accordance with data retention policies and procedures. These Exhibits are authentic within the meaning of the Federal Rules of Evidence in that they are what they purport to be.

I declare under perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of September, 2026.

Signed by:

Andrew Schuddeboom

90C1BB7F8D5C4E8...

ANDREW J. SCHUDDEBOOM